1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JASON SMITH,

Plaintiff,

v.

DR. LAW FU, et al.,

Defendants.

Case No. 19-02119 BLF (PR)

**ORDER GRANTING DEFENDANT KOWALL'S MOTION FOR SUMMARY JUDGMENT; DENYING MOTION TO DISMISS AS MOOT**

(Docket Nos. 27, 39)

Plaintiff, a California inmate, filed the instant *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against medical staff at the Correctional Training Facility ("CTF"). Dkt. No. 1. The Court found the complaint stated a cognizable claim under the Eighth Amendment for deliberate indifference to serious medical needs and ordered Defendants Dr. Law Fu, Dr. Rachel Ross, Dr. Mark Kowall, M. Votaw, and S. Posson to file a motion for summary judgment or other dispositive motion. Dkt. No. 4.[1]

Defendant Dr. Kowall filed a motion to dismiss pursuant to Rule 12(b)(6) of the

---

[1] In the same order, the Court granted Plaintiff leave to amend to state sufficient facts to state a First Amendment claim, but Plaintiff filed notice that he wished to proceed solely on the Eighth Amendment claim. Dkt. No. 5. Accordingly, the First Amendment claim was stricken from the complaint. Dkt. No. 6 at 1.

Federal Rules of Civil Procedure.  Dkt. No. 27.[2]  He subsequently filed a motion for

summary judgment pursuant to Rule 56 on the grounds that Plaintiff is unable to set forth

facts sufficient to create a genuine issue of material fact as to any cause of action against

him.  Dkt. No. 39.  In support, Defendant Kowall filed a declaration and exhibits.  *Id.*

Plaintiff filed opposition along with a declaration and exhibits in support.  Dkt. No. 43.

Defendant Kowall filed a reply.  Dkt. No. 44.

For the reasons stated below, Defendant Kowall's motion for summary judgment is

**GRANTED**.  Defendant Kowall's motion to dismiss is DENIED as moot.

## DISCUSSION

### I.    Statement of Facts[3]

Plaintiff is an inmate at the Correctional Training Facility ("CTF") in Central

Soledad, where he was housed during the underlying incident.  Dkt. No. 1 at 1.  Plaintiff

describes himself as a chronic care patient diagnosed with osteoarthritis in his right

shoulder which has caused him chronic pain since July 2015.  *Id.* at 10.  He was prescribed

a daily dose of 15mg of methadone since that time.  *Id*. at 10.

Defendant Dr. Mark Kowall is a physician board certified in Orthopedic Surgery,

who contracts with the California Department of Corrections and Rehabilitation ("CDCR")

to see inmates at Twin Cities Community Hospital ("Hospital"), in a clinic the Hospital

has provided for that purpose.  Kowall Decl. ¶ 3, Dkt. No. 39 at 13-14.  A nurse employed

by the Hospital is in charge of scheduling the appointments.  *Id.*  Defendant Kowall has

privileges at the Hospital but is not an employee of the Hospital.  *Id.*

---

[2] Defendants Fu, Posson, and Votaw filed a separate motion for summary judgment, Dkt. No. 29, which will be addressed in a separate order.  Defendant Dr. Rachel Ross has not yet been served, and the last request for waiver of summons sent to her at the address provided by Plaintiff has not been returned.  Dkt. Nos. 16, 20, 22.

[3] The following facts are not disputed unless otherwise stated.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

On July 25, 2018, Plaintiff was transported to the Hospital for an appointment with Defendant Kowall for an orthopedic evaluation for surgery to reduce chronic pain associated with severe osteoarthritis in his right shoulder.  Kowall Decl. ¶¶ 4, 5; Smith Decl. ¶ 5, Dkt. No. 43 at 13-15, Dkt. No. 1 at 11.  Upon his arrival at the Hospital parking lot, Plaintiff was approached by "C/O Alejo," one of the transportation officers, with a single page contract "numbered page 3 of 3" and instructed to sign the document before receiving any treatment.  *Id.*  Plaintiff declined to sign the document as pages 1 and 2 were omitted.  *Id.* at 11.  He later entered the facility and was permitted to read pages 1 and 2 of the document.  *Id.*  Plaintiff realized that if he signed page 3 of the document, he would be agreeing to "things such as but not limited to: (i) that… any treatment, medications, or advice given to him that had lead to any side effects or mis-haps, he the patient waives his Rights to hold Twin City Medical Community liable, (ii) that the facility uses organs and tissues in experimental treatment, (iii) in the event the patient undergoes surgery, by signing Page 3 he/she consent to having the surgery videotape, and (iv) by signing page 3 you acknowledge you have read the entire contract and agreed to the Terms and Agreements."  *Id.*  Plaintiff declined to sign the document and was subsequently denied medical treatment by Defendant Kowall.  *Id.*

According to Defendant Kowall, the Hospital requires that all patients sign a Consent for Treatment and Conditions for Admissions form before they are seen.  Kowall Decl. ¶ 3, Ex. A ("Consent for Treatment and Conditions for Admission").  Defendant Kowall does not require his patients to sign any forms.  *Id.*  Defendant Kowall did not see or interact with Plaintiff on that day or any other day.  *Id.* ¶ 4.  Defendant Kowall was informed by the nurse that Plaintiff had refused to sign the consent form and had been transported back to the prison.  *Id.*  Plaintiff's appointment was rescheduled for May 7, 2019, but he did not appear for that visit.  *Id.*  Defendant Kowall was never notified by anyone that Plaintiff's condition was urgent or such that he needed to be seen right away. *Id.* ¶ 5.  Defendant Kowall never spoke to any of Plaintiff's treatment providers at the

United States District Court
Northern District of California

prison regarding his care and treatment and was not involved in any of Plaintiff's care at the prison.  *Id*. ¶ 6.

Plaintiff states for the first time in a declaration submitted in support of his opposition that he had personal interaction with Defendant Kowall on July 25, 2018, and that Defendant Kowall personally refused to administer medical treatment to him.  Smith Decl. ¶ 7, Ex. B.  Plaintiff states that the 7-page consent form provided by Defendant Kowall as Exhibit A was not the 3-page "Waiver of Liability" that he refused to sign for which he was denied treatment.  *Id.* ¶ 6.  Plaintiff states that Defendant Kowall, not a nurse, took his refusal to sign the "Waiver of Liability."  *Id.* ¶ 7, Ex. B.  Plaintiff states that he had no knowledge of a rescheduled appointment with Defendant for May 7, 2019, nor did he refuse any follow-up orthopedic evaluation that was scheduled for him by prison medical staff.  *Id.* ¶ 8, Ex. C.

Plaintiff was later seen by Defendant Dr. Law Fu on July 29, 2018.  Dkt. No. 1 at 11.  According to Plaintiff, Defendant Fu informed him that he was going to take Plaintiff off of his previously prescribed daily 15mg Methadone because Plaintiff refused to sign the "Contract/Arbitration Agreement" that Defendant Kowall had presented to Plaintiff on July 25, 2018.  *Id.* at 12.  Plaintiff states that Defendant Fu told him, "I'm going to document that the reason for taking you off your prescribed 15mg Methadone per day was because you had a positive Urine Analysis for THC in May of 2018."  *Id.*  When Plaintiff expressed concern with having withdrawal symptoms, Defendant Fu responded, "He don't care about any withdrawal symptoms and I (Plaintiff) should have just signed the waiver Liability when I (Plaintiff) had went to see defendant Dr. Kowall on 07/25/18 then none of this would be happening."  *Id.*  Plaintiff also states that when he later saw Defendant Dr. Rachel Ross on August 6, 2018, and requested "low level medications to contain the withdrawal symptoms," she informed him, "you should have just signed the waiver form when you went to see defendant Dr. Kowall on 07/25/18, now you could smoke all the marijuana you want to."  *Id.* at 12-13.

4

## II.   **Summary Judgment**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Cattret*, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp.*, 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted); Fed. R. Civ. P. 56(e).  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corporation Securities Litigation*, 627 F.3d 376, 387 (9th Cir.

United States District Court
Northern District of California

2010) (citing *Liberty Lobby*, 477 U.S. at 252). "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id.; see, e.g., Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

## A.   **Deliberate Indifference**

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.*

The following are examples of indications that a prisoner has a "serious" need for medical treatment: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *See Farmer*, 511 U.S. at 837.  The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he must actually draw that inference. *Id*.  If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

**B.**   **Analysis**

Plaintiff claims that Defendant Kowall was contracted with the CDCR and thereby a state actor. Dkt. No. 1 at 9.  Plaintiff claims Defendant Kowall "knowingly, unlawfully, and with specific intent violated [his] rights by denying Plaintiff medical treatment on 07/25/18, when plaintiff refused to sign a deceptive waiver of Liability Doctrine/ Arbitration Agreement," and  that Defendant "subsequently conspire[ed] with defendants Dr. Law Fu and Dr. Rachel Ross to abruptly terminat[e] Plaintiff's previously prescribed Pain Medication which subjected Plaintiff to cruel and unusual punishment." *Id.*

Defendant first asserts that Plaintiff is unable to show that he was deprived of something sufficiently serious because there are no facts to suggest that the orthopedic evaluation was of an urgent nature. Dkt. No. 39 at 9.  Rather, Plaintiff was a chronic care patient who has had osteoarthritis in his right shoulder for approximately three years. *Id.*, citing Dkt. No. 1 at 10.  Therefore, Defendant asserts, that since the proposed evaluation

was not of an urgent nature, it cannot be said to be a sufficiently serious deprivation so as to constitute deliberate indifference under the objective standard.  *Id.*   Defendant also asserts that Plaintiff is unable to present any evidence to establish the subjective element, *i.e.*, that Defendant had knowledge that Plaintiff was being denied treatment and that the denial was likely to cause him substantial risk of serious harm.  *Id.* at 10.  Defendant asserts that he did not even know that Plaintiff was at the Hospital, and that a nurse informed him of Plaintiff's refusal to sign the consent form and transport back to the prison.  *Id.*  Defendant also asserts that he was not the one who required Plaintiff to sign the consent form; it was required by the Hospital prior to being seen.  *Id.* at 10-11.  Lastly with respect to the conspiracy claim, Defendant Kowall asserts that Plaintiff cannot state such a claim because Defendant never had any contact with Plaintiff's treating physicians at the prison and was not involved in Plaintiff's care and treatment at the prison.  *Id.* at 11.

In opposition, Plaintiff asserts for the first time that he had personal interaction with Defendant Kowall on July 25, 2018.  He states in his opposition that when he arrived at the Hospital parking lot, Correctional Officer Alejo presented him with page 3 of a waiver of liability document and instructed him to sign it prior be being seen by Defendant Kowall.  Dkt. No. 43 at 3.  Plaintiff states that he later entered the facility, and "while in the presence of defendant Dr. M. Kowall, in his office, read pages one and two of the document and subsequently declined to sign what Plaintiff then perceived as a deceptive arbitration agreement with Dr. Kowall."  *Id.*  In support he relies on a copy of correspondence from Nurse M. Chua to Dr. Anderson, stating the following: "Also, he wants to still see the ortho specialist.  His refusal to sign the paper presented to him at the time of specialist visit 7/25/18 was taken by specialist as a refusal of treatment, per patient."  *Id.*, Ex. B, Dkt. No. 43 at 19.  Plaintiff also provides a copy of a health care grievance "Headquarters' Level Response" dated January 17, 2019, wherein it states: "It was noted that you refused to be seen for your shoulder while in the provider's office because you did not want to sign a waiver for risks of surgery.  You were informed that

8

physicians can choose to not accept a new patient who does not sign their Arbitration Agreement." *Id.*, Ex. D, Dkt. No. 43 at 25. Plaintiff asserts that he was never presented with a 7-page document, only a 3-page "waiver of liability" document. *Id.* at 3. Plaintiff asserts that Defendant Kowall had copies of his medical records and knew that his visit was for an evaluation for orthopedic surgery or other surgical procedures, with the goal that such procedure would require Plaintiff ingest "less narcotics." *Id.* at 4. Plaintiff asserts that as a result of Defendant Kowall's denial of medical treatment on July 25, 2018, after he refused to sign the arbitration agreement, Defendant Fu discontinued his methadone medication on July 29, 2018. *Id.* at 4. Therefore, Plaintiff asserts, Defendant Kowall's actions were the proximate cause of Defendant Fu's actions, causing ongoing pain and suffering. *Id.*

In reply, Defendant Kowall asserts that Plaintiff's declaration and evidence submitted in opposition are insufficient to show that he knowingly disregarded any serious medical needs. Dkt. No. 44 at 2. Rather, Defendant asserts, the undisputed evidence shows that Plaintiff refused to sign an admission form required by the Hospital, and Defendant Kowall was unable to treat Plaintiff due to the Hospital policy which requires forms to be signed prior to treatment. *Id.* Defendant asserts that although Plaintiff disputes the document he refused to sign was the 7-page Consent for Treatment and Conditions for Admission form, he does not dispute that the form he was asked to sign was a form the Hospital required. *Id.* Regardless of whether the form consisted of three or seven pages, Defendant asserts that the undisputed evidence shows that he was unable to treat patients at the Hospital unless they sign the forms required by the Hospital, and Plaintiff refused to sign. *Id.* at 2-3. Furthermore, Defendant Kowall objects to Plaintiff's testimony and evidence that the person he interacted with at the Hospital was Defendant Kowall since there is no evidence that Plaintiff had ever been treated by him prior to that date. *Id.* at 3. Defendant asserts that Plaintiff fails to explain how he knew it was Defendant Kowall as opposed to the nurse or other administrative official at the Hospital,

and Plaintiff does not state that Defendant Kowall introduced himself to Plaintiff. *Id.* Furthermore, Defendant asserts that even if Plaintiff could prove that they had personal interaction that day, Plaintiff has still failed to establish that Defendant was deliberately indifferent to any serious medical need based on Plaintiff's refusal to sign the required paperwork where Plaintiff was merely seeking an evaluation of his chronic osteoarthritis, a condition he had been living with for years. *Id.* at 3-4. Lastly, Defendant asserts that there is no evidence to support Plaintiff's claim that there was a conspiracy between Defendant Kowall and any of his treating physicians at the Hospital. *Id.* at 4.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds there is no genuine dispute as to any material fact relating to Plaintiff's claim of deliberate indifference against Defendant Kowall. First of all, it matters not what the exact nature of the paperwork was that Plaintiff refused to sign, *i.e.*, whether it was a 7-page consent form or a 3-page "waiver of liability." *See supra* at 3-4. Rather, it only matters that Plaintiff was denied treatment because he refused to sign it; that fact is undisputed. Secondly, while there is a genuine dispute over whether Defendant Kowall personally met with Plaintiff on July 25, 2018, and refused to treat him based on Plaintiff's refusal to sign some paperwork, that dispute is also immaterial.[4] Even if the Court assumes that Defendant Kowall did meet Plaintiff and refused him treatment on July 25, 2018, there is no evidence that his actions amount to deliberate indifference.

The undisputed evidence shows that the purpose of the visit was an evaluation for surgery to ease the chronic pain associated with Plaintiff's osteoarthritis in his right shoulder. *See supra* at 2. Even assuming that Plaintiff's condition was sufficiently serious to satisfy the first element for an Eighth Amendment claim, there is no evidence to satisfy the second element: that Defendant Kowall was aware of an excessive risk of harm to

---

[4] In his declaration, Defendant Kowall denies ever meeting Plaintiff either on July 25, 2018, or at any other time. *See supra* at 3. Plaintiff disputes this assertion in opposition, stating that Defendant has failed to produce any evidence that a "nurse" was the person that refused him medical treatment on July 25, 2018. *Id.* at 4.

Plaintiff that needed to be abated.  *See Farmer*, 511 U.S. at 837.  It is undisputed that Defendant was never notified that Plaintiff's condition was urgent such that he needed to be seen right away.  Kowall Decl. ¶ 5.  In response to Plaintiff's discovery request, Defendant Kowall provided Plaintiff with copies of all the medical records or documents he had for Plaintiff.  Dkt. No. 43 at 32-39.  These papers include a "Health Care Services Physician Request for Services," dated May 2, 2018, requesting orthopedic surgery for Plaintiff's "chronic shoulder pain."  Dkt. No. 43 at 37.  The request was indicated as "routine," rather than "emergent" or "urgent."  *Id.*  Furthermore, this request was accompanied by notes from two exams on January 22, 2015, and May 20, 2016.  *Id.* at 35-37.  The first exam notes dated January 22, 2015, compared x-rays of Plaintiff's right shoulder with those taken on November 6, 2014, and the second notes from May 20, 2016, compared a recent MRI of Plaintiff's right shoulder with the prior year's January 22, 2015 exam.  *Id.*  Lastly, there was included an outpatient progress note dated March 22, 2018, stating that an orthopedic consultation was requested, and that the "goal of our referral to the orthopedist is to determine if patient would benefit from arthroscopic surgery or other surgical procedures.  The hope will be that he would require less narcotics."  *Id.* at 39. Plaintiff does not dispute that these documents contained all the information that Defendant Kowall had with respect to Plaintiff's referral for orthopedic surgery.  Dkt. No. 43 at 8.  There is no indication in these papers that Plaintiff's condition was emergent or urgent.  Rather, the information provided to Defendant Kowall indicated that Plaintiff had this condition since 2015, and that the timeline was "routine."  The purpose of the evaluation was to "determine if patient would benefit" from surgery, with the "hope" that it could reduce his need for narcotics.  *Id.* at 39.  It cannot be said that this language put Defendant on notice that an immediate evaluation was necessary to reduce a substantial risk of serious harm to Plaintiff.  Accordingly, there is no evidence establishing that when Defendant Kowall refused to treat Plaintiff because he did not sign some forms on July 25, 2018, Defendant did so despite knowing that Plaintiff faced a substantial risk of serious

harm if he was not immediately provided with an evaluation that day.  *See Farmer*, 511 U.S. at 837.  Even if Defendant should have been aware of the risk but was not, as he attests, Defendant has not violated the Eighth Amendment, no matter how serious the risk.  *See Gibson*, 290 F.3d at 1188.

Plaintiff asserts that Defendant Kowall was aware that the purpose of the medical visit "was to evaluate and schedule orthopedic surgery with the goal to eliminate years of chronic pain."  Dkt. No. 39 at 9.  Plaintiff asserts that "it has been long established that doctors can not [*sic*] subject prisoners to wanton and unnecessary pain and suffering, by refusing to timely see to it that prisoners are examined and treated by 'specialists.'"  *Id.*  However, the evidence shows that there was no guarantee or expectation that surgery would eliminate Plaintiff's chronic pain.  As the referral notes stated, the evaluation by the orthopedist was "to determine *if* patient would benefit" from surgery, with the "*hope*" that Plaintiff would require less narcotics.  Dkt. No. 43 at 39 (emphasis added).  Accordingly, it cannot be said that Defendant Kowall knew that a failure to examine Plaintiff on July 25, 2018, would subject Plaintiff to wanton and unnecessary pain where the actual benefits of surgery were unknown.  Ultimately, Plaintiff must submit evidence that Defendant knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable steps to abate it.  As discussed above, he has not.

### C.   Conspiracy

Plaintiff claims that Defendant Kowall conspired with Defendants Fu and Ross to later terminate his pain medication.  Dkt. No. 1 at 9.  Conspiracy is not itself a constitutional tort under 42 U.S.C. § 1983.  *Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012) (en banc).  It does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation.  *Id.*  Here, there is no underlying constitutional violation because there is no evidence establishing Defendant Kowall acted with deliberate indifference to Plaintiff's serious medical needs on July 25, 2018.

Furthermore, a civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage. *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999). To prove a civil conspiracy, the plaintiff must show that the conspiring parties reached a unity of purpose or common design and understanding, or a meeting of the minds in an unlawful agreement. *Id.* Defendant Kowall attests that he never spoke to any of Plaintiff's treatment providers at the prison and was not involved in his care at the prison. *See supra* at 3-4. Plaintiff provides no evidence to show otherwise. Rather, Plaintiff asserts in opposition that Defendant Kowall's actions were the "proximate cause" for Defendants Fu later discontinuing his methadone prescription. *See supra* at 9. Even if it were true that Defendant Fu decided to discontinue Plaintiff's pain medication because he refused to sign Defendant Kowall's paperwork, there is no evidence that Defendant Kowall was complicit in Defendant Fu's actions. A causal connection is not sufficient to establish that there was a meeting of the minds between Defendants Kowall and Fu in an unlawful agreement to deprive Plaintiff of his Eighth Amendment rights where there is no evidence of any communication between them. *See Gilbrook*, 177 F.3d at 856. Accordingly, Defendant Kowall is entitled to summary judgment on the conspiracy claim.

### D.   Punitive Damages

Lastly with respect with Plaintiff's claim for punitive damages, Defendant Kowall asserts that punitive damages may be awarded in a § 1983 suit only "when defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Dkt. No. 39 at 11, citing *Smith v. Wade*, 461 U.S. 30, 56 (1983). Defendant asserts that Plaintiff is unable to show he acted with an evil motive or was recklessly indifferent to Plaintiffs' rights given the evidence that he never even knew Plaintiff was denied any treatment. *Id*. Defendant points out in reply that Plaintiff's opposition is silent with respect to this argument, and

there is no evidence to even remotely suggest that Defendant Kowall was guilty of oppression, fraud, or malice.  Dkt. No. 44 at 4; Dkt. No. 43.

As discussed above, there is no genuine dispute of material fact that Defendant Kowall acted with deliberate indifference to Plaintiff's serious medical needs.  *See supra* at 11-12.  Specifically, there is no evidence that Defendant knew that Plaintiff faced a substantial risk of serious harm if he was not evaluated that day for surgery and yet failed to act.  *Id.*  Likewise, there is no evidence that Defendant acted with evil motive or intent, or with reckless or callous indifference.  *See Smith*, 461 U.S. at 56.  Accordingly, the claim for punitive damages must be dismissed.

**E.     Conclusion**

Based on these undisputed facts, Defendant has shown there is an absence of a genuine dispute of material fact with respect to the Eighth Amendment and conspiracy claims against him.  *See Celotex Corp.*, 477 U.S. at 323.  Plaintiff has failed to meet his burden of identifying with reasonable particularity the evidence that precludes summary judgment, *see Keenan*, 91 F.3d at 1279, or submit evidence from which a jury could reasonably render a verdict in his favor, *In re Oracle Corporation Securities Litigation*, 627 F.3d at 387.  Accordingly, Defendant Kowall is entitled to summary judgment on all the claims against him.  *See Celotex Corp.*, 477 U.S. at 323.

**CONCLUSION**

For the reasons stated above, Defendant Mark G. Kowall's motion for summary judgment is **GRANTED**.  Dkt. No. 39.  The Eighth Amendment deliberate indifference claim against him is **DISMISSED** with prejudice.  Accordingly, Defendant Kowall's prior motion to dismiss is **DENIED** as moot.  Dkt. No. 27.

The Clerk shall terminate Defendant Kowall from this action.

This order terminates Docket Nos. 27 and 39.

///

14

United States District Court
Northern District of California

1    **IT IS SO ORDERED.**

2    **Dated:  _August 28, 2020_____**

3                                                    BETH LABSON FREEMAN
                                                     United States District Judge
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Order Granting MSJ; Deny MTD as Moot
      PRO-SE\BLF\CR.19\02119Smith_grant-msj.Kowall
26

27

28                                        15