United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JASON SMITH,<br><br>          Plaintiff,<br><br>   v.<br><br>DR. LAW FU, et al.,<br><br>          Defendants. | Case No. 19-02119 BLF (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br><br>(Docket No. 29) |

Plaintiff, a California inmate, filed the instant *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against medical staff at the Correctional Training Facility ("CTF"). Dkt. No. 1. The Court found the complaint stated a cognizable claim under the Eighth Amendment and ordered Defendants Dr. Law Fu, Dr. Rachel Ross,[1] Dr. Mark Kowall,[2] M. Votaw, and S. Posson to file a motion for summary judgment or other dispositive motion. Dkt. No. 4.[3]

---

[1] Defendant Dr. Rachel Ross has not yet been served, and the last request for waiver of summons sent to her at the address provided by Plaintiff has not been returned. Dkt. Nos. 16, 20, 22.

[2] Defendant Dr. Mark Kowall separately filed a motion to dismiss and motion for summary judgment which has been addressed in a separate order. Dkt. Nos. 27, 39, 51.

[3] In the same order, the Court granted Plaintiff leave to amend to state sufficient facts to

United States District Court
Northern District of California

Defendants Fu, Votaw, and Posson filed a motion for summary judgment pursuant to Rule 56 on the ground that undisputed material facts establish that they did not act with deliberate indifference to any serious medical need.  Dkt. No. 29.  In support, Defendants filed declarations and exhibits.[4]  *Id.*  Plaintiff filed opposition along with a declaration and exhibits in support.  Dkt. Nos. 45, 46.  Defendants filed a reply.  Dkt. No. 47.

For the reasons stated below, Defendants' motion for summary judgment is **GRANTED**.

## DISCUSSION

I.    <u>Statement of Facts</u>[5]

A.    <u>Parties</u>

Plaintiff is an inmate at the Correctional Training Facility ("CTF") in Central Soledad, where he was housed during the underlying events of this action.  Dkt. No. 1 at 1.

Defendant Dr. Fu is a physician and surgeon, who is employed by the CDCR and currently works at Deuel Vocational Institution ("DVI") in Tracy.  Fu Decl. ¶ 1, Dkt. No. 29-2.  Defendant Fu was working at CTF at the time of the underlying events of this action.  *Id.*  Defendant Fu reviewed Plaintiff's medical records maintained by the CDCR and is familiar with its contents.  *Id.* ¶ 4, Ex. A.

Defendant Dr. Posson is an osteopathic physician and surgeon, who is currently employed by the CDCR as Chief Medical Executive at CTF.  Posson Decl. ¶ 1.  His

---

state a First Amendment claim, but Plaintiff filed notice that he wished to proceed solely on the Eighth Amendment claim.  Dkt. No. 5.  Accordingly, the First Amendment claim was stricken from the complaint.  Dkt. No. 6 at 1.

[4] In support of their summary judgment motion, Defendants submit the declarations of Defendant Fu, Dkt. No. 29-2, Defendant Posson, Dkt. No. 29-3, Defendant Votaw, Dkt. No. 29-4, and counsel Wil Fong, Dkt. No. 29-5.  The declarations are accompanied by exhibits that contain authenticated copies of excerpts from Plaintiff's health care records and inmate appeal records.  *Id.*

[5] The following facts are not disputed unless otherwise stated.

2

responsibilities include overseeing medical care services to inmates.  *Id.*  Defendant Posson reviewed Plaintiff's health care grievance package, his health records, and all pertinent departmental policies and procedures.  *Id.* ¶ 8.

Defendant M. Votaw is employed by the CDCR as a Prison Health Care Grievance Coordinator at CTF.  Votaw Decl. ¶ 1.  Her responsibilities involve processing and forwarding 602 appeals to CDCR medical staff for review in accordance with Title 15 guidelines.  *Id.* ¶ 8.  Defendant Votaw reviewed Plaintiff's health care appeal records maintained by the CDCR and is familiar with its contents, including Plaintiff's appeal No CTF HC 18001258, related to this lawsuit.  *Id.* ¶ 3, Ex. A.

**B.   Methadone Taper**

Plaintiff had surgery on his right shoulder on June 10, 2015.  Smith Decl. ¶ 9, Dkt. No. 46; *id.*, Ex. C.  He was prescribed Methadone (15 to 20 mg per day) to threat his chronic pain as of June 17, 2015.  *Id.*, Ex. D.

Plaintiff was diagnosed with osteoarthritis in his right shoulder on October 12, 2016.  Fu Decl. ¶ 7, Ex. A at CDCR-000010.  At that time, Plaintiff was still prescribed Methadone, an opioid pain medication, for 15 mg daily (10 mg in the morning, and 5 mg in the afternoon).  *Id.*, Ex. A at CDCR-000159.

On March 22, 2018, as part of his treatment plan, Plaintiff signed a Chronic Pain Provider-Patient Agreement/Informed Consent for Opioid Pain Medication with his primary care provider ("PCP"), Dr. Friederichs.  Fu Decl. ¶ 8, Ex. A at 000122.  In that agreement, Plaintiff agreed that while he was taking Methadone, he would not use any other non-prescribed mood-altering drugs.  *Id.*  Plaintiff also agreed to routine urine drug testing and acknowledged that testing positive for improper drug use could result in his Methadone being tapered and stopped.  *Id.*

On May 21, 2018, Plaintiff submitted a urine sample for drug testing which came back positive for cannabis/marijuana.  Fu Decl. ¶ 9, Ex. A at CDCR-000159, 000281. Plaintiff's marijuana use constituted a violation of both his pain treatment contract and

United States District Court
Northern District of California

CDCR policy.  *Id.*  According to Defendants, using marijuana while taking Methadone posed an adverse health risk to Plaintiff as doing so increases the risk of central nervous system depression.  *Id.*  Plaintiff later challenged the validity of the positive urine sample, contending that the result could have been a false positive because he was taking other medication, i.e., Motrin, Ibuprofen, and Naproxen, which was available at the prison's canteen, free of cost.  Smith Decl. ¶ 11, Ex. E.

Defendant Fu saw Plaintiff one time on July 29, 2018, during a clinic appointment at CTF.  *Id.* ¶ 6.  Defendant Fu was not Plaintiff's primary care provider, but he evaluated Plaintiff on that date while covering an extra work shift at CTF.  *Id.*, Ex. A at CDCR-0681. At this appointment, Defendant Fu tapered Plaintiff off Methadone due to his pain contract violation for testing positive for cannabis on May 21, 2018.  *Id.* ¶ 10, Ex. A at CDCR-000156-000157, 000222, 000255.  At that time, Plaintiff was being provided Methadone, 15 mg daily.  *Id.*  Defendant Fu's taper plan consisted of 10 mg of Methadone daily for seven days, then 5 mg daily for another seven days.  *Id.* ¶ 11, Ex. A at CDCR-000020, 000021, 000158.[6]  As an alternative pain medication, Defendant Fu offered Plaintiff Tylenol 3 (Tylenol with codeine), but Plaintiff stated he could not take that medication because he was allergic to codeine.  Fu Decl. ¶ 12; Smith Decl. ¶ 12.  Defendant Fu noted that Plaintiff would follow-up with his PCP for alternative treatment for his shoulder and further evaluation of his chronic pain care.  *Id.*, Ex. A at CDCR-000157.  Defendant Fu had no further involvement in Plaintiff's medical care after that appointment.

According to Plaintiff, Defendant Fu was the only physician who made the decision to discontinue his methadone treatment on July 29, 2018.[7]  Smith Decl. ¶ 12.  Plaintiff also

---

[6] This prescription is reflected in Plaintiff's medical records as Methadone, 5 mg, BIDAM+PM (once in the morning and once in the afternoon) from 7/29/18 (first dose) to 8/5/18 (stop date); and then 5 mg, qPM (once in the afternoon) from 8/5/18 (first dose) to 8/12/18 (stop date).

[7] Defendants assert that Dr. Anderson, not a party to this action, made the decision to discontinue the Methadone.  Dkt. No. 29 at 7.  However, this appears to be a misreading of the correspondence regarding Plaintiff's treatment.  Fu Decl., Ex. A at CDCR-000111-

states that Defendant Fu told him during their appointment that had Plaintiff signed the waiver of liability presented to him by Defendant Kowall on July 25, 2018, for an evaluation for orthopedic surgery, the methadone treatment would not have been discontinued.  Smith Decl. ¶ 15.

Plaintiff had three follow-up appointments thereafter regarding his pain management care.  First on August 6, 2018, Plaintiff met with Defendant Dr. Ross, complaining of his methadone tapering.  Fu Decl., Ex. B at CDCR 000155, Dkt. No. 29-1 at 19.  According to the progress notes, Defendant Ross discussed the 4 classes of drugs to try help manage his chronic pain: acetaminophen, anti-inflammatories that are nonsteroidal, antiseizure medicine, and antidepressants.  *Id.*  Defendant Ross also informed Plaintiff of the option to use Capsaicin, a cream that has been known to help with chronic pain in the past.  *Id.*  The notes indicate that Plaintiff chose a trial of the Capsaicin Cream. *Id.*  Defendant Ross noted that Plaintiff's taper of Methadone would finish in 6 days.  *Id.* Plaintiff's Methadone taper finished on August 12, 2018.  Smith Decl. ¶ 20.

Plaintiff had his next follow-up on September 6, 2018, with Dr. Anderson, who is not a party to this action.  Fu Decl., Ex. B at CDCR 000154-000155, Dkt. No. 29-1 at 18-19.  The progress notes indicate that Plaintiff was "very upset" regarding the Methadone taper and requested to be placed back on it due to uncontrolled pain.  *Id.* at CDCR-000154. Dr. Anderson discussed with Plaintiff "at length" the reason for the Methadone taper, i.e., the breach in pain management contract.  *Id.* at CDCR-000155.  Dr. Anderson indicated that she would not reinstate the Methadone but would do a trial of non-narcotic medication, "oxcarbazepine twice daily."  *Id.*

---

000112; Dkt. No. 29-1 at 11-12.  On September 9, 2019, Nurse Carlos Soriano sent an electronic message to Dr. Anderson regarding Plaintiff's prescription for oxcarbazepine, which Plaintiff reported was "not working for him."  *Id.*, Ex. A at CDCR-000112.  In response on September 12, 2018, Dr. Anderson messaged, "I discontinued it," which clearly refers to the oxcarbazepine, not the methadone.  *Id.*  Dr. Anderson then states: "[Plaintiff] was recently taken off of methadone due to violation of pain contract and opiate therapy will not be restarted. I ordered regular Tylenol he can take for pain."  *Id.*

5

Plaintiff had another follow-up on September 27, 2018, with Dr. Thao Nguyen, not a party to this action.  Fu Decl., Ex. B at CDCR 000152-000153, Dkt. No. 29-1 at 16-17. The progress notes indicate that Plaintiff was still "very upset" over the Methadone taper. *Id.* at CDCR-000152.  Dr. Nguyen noted that Plaintiff had tried "trileptal, sulindac, ibuprofen, naproxen, and Tylenol 3." *Id.* at CDCR-000153.  In response to Plaintiff's request for PT (physical therapy) and theraband, Dr. Nguyen "referred him." *Id.*  Elavil was also prescribed to help Plaintiff sleep. *Id.*

According to Plaintiff, the only medication he was prescribed to alleviate his chronic pain and opioid withdrawal from August 12, 2018 to September 6, 2018, was Capsaicin Cream, which only inflamed his right shoulder chronic pain.  Smith Decl. ¶ 20. Three days after his last Methadone dose on August 12, 2018, Plaintiff filed an "emergency" health care appeal seeking care for his chronic pain and opioid withdrawal symptoms, i.e., headaches, dizziness, diarrhea, cramps, etc. *Id.* ¶¶ 20, 21.  That appeal is discussed below.

### C.   Health Care Appeal

On August 15, 2018, Plaintiff submitted a 602 Health Care Appeal ("602 Appeal"), complaining of being removed from Methadone; it was assigned appeal No. CTF HC 18001258.  Votaw Decl. ¶ 5, Ex. A at CDCR-00679.  Pursuant to departmental procedure, Plaintiff's appeal was clinically triaged on August 16, 2018, by M. Chua, Health Care Appeals Registered Nurse, to determine if his appeal was to be processed on an expedited basis. *Id.* ¶ 6, Ex. A at CDCR-00679.  RN Chua noted Plaintiff's appeal should be processed as a non-expedited appeal. *Id.*

On August 21, 2018, Defendant Votaw screened the appeal, and assigned it to the Central Clinic Primary Care Provider.  Votaw Decl. ¶ 7, Ex. A at CDCR-00679.  She does not determinate whether an inmate's 602 appeals should be processed as expedited or non-expedited and did not do so with respect to Plaintiff's appeal. *Id.* ¶ 9.  The determination is made by CDCR medical staff who utilize clinical judgment within the scope of their

6

licensure. *Id.*

On October 18, 2018, Defendant Posson prepared the Institutional Level Response for Plaintiff's 602 Health Care Appeal ("602 Appeal") regarding Plaintiff's complaint of being removed from Methadone. Posson Decl. ¶ 7, Ex. B at CDCR-00682-00684. A face-to-face interview was not conducted as Plaintiff did not request one by initialing the appropriate box on the 602 Appeal grievance form. *Id.*, Ex. B at CDCR-00679. Defendant Posson's response noted the fact that Plaintiff had tested positive for marijuana after a random urine drug screen with his PCP on May 21, 2018. *Id.* ¶ 8, Ex. A at CDCR-000159, 000281; *id.*, Ex. B at CDCR-00683. It was also noted that Plaintiff continued to receive Methadone until he was seen for a follow-up with Defendant Fu on July 29, 2018. *Id.* ¶ 9. At that appointment, Defendant Fu advised Plaintiff that his positive marijuana urine drug screen constituted a violation of his pain care contract. *Id.*, Ex. A at CDCR-000156-000157; *id.*, Ex. B at CDCR-00683. Plaintiff's plan of care was changed to taper him off Methadone, with a follow-up to discuss alternative pain management therapies such as oxcarbazepine. *Id.*, Ex. A at CDCR-000020, 000021, 000154-055, 000158; *id.*, Ex B at CDCR-00683. Defendant Posson also noted that Plaintiff had informed his "PCP" on July 29, 2018, that he did not want to sign the liability documents required for treatment by the outside specialist, and that in refusing to sign, he was only refusing to waive liability and not the procedure. *Id.* ¶ 11, Ex. A at CDCR-000156; *id.*, Ex. B at CDCR-00683. Defendant Posson's response informed Plaintiff that while he has the right to refuse most health care, Plaintiff is encouraged to cooperate with his health care providers to achieve optimal clinical outcome, and he also has the right to refuse to sign waivers or consents, but it may result in the specialty provider exercising their right to refuse treatment. *Id.* Defendant Posson also informed Plaintiff that patient-specific factors such as comorbidities, previous history, and risk/benefit assessment are considered when making drug selection. *Id.* ¶ 12, Ex. B at CDCR-000683. Plaintiff was also informed that opioids were not the preferred treatment for chronic pain, and that non-pharmacologic therapies

and non-opioid therapies are preferred for managing chronic non-cancer pain.  *Id.*
Defendant Posson stated that the opioid therapy guidelines outlined in the CCHCS Care
Guide: Pain Management Part 3 – Opioid Therapy, which sets forth the CDCR's policy,
are based on the 2016 Centers for Disease Control and Prevention Guidelines for
Prescribing Opioids.  *Id.*  Defendant Posson stated that Plaintiff's medical condition would
continue to be monitored, with care provided as determined as medically or clinically
indicated by the PCP.  *Id.* ¶ 13, Ex. B at CDCR-0183-0184, 0302.  Lastly, Defendant
Posson stated that California law directs Plaintiff's health care providers to offer and
provide only the care they determine to be currently medically or clinically necessary for
him, in accordance with appropriate policies and procedures.  *Id.* ¶ 14, Ex, B at CDCR-
00684.  Previous orders from other health care facilities or staff, input from health care
consultants, and/or his own personal preferences may be considered, but do not control the
professional judgment of his current health care providers.  *Id.*  Based on these reasons,
Defendant Posson's decision at the Institutional Level Response was that no additional
intervention was needed.  *Id.* ¶ 15, Ex. B at CDCR-00682-00684.

According to Plaintiff, various medical providers, including his surgeon Dr. Paik,
PCP Dr. T. Friederichs, and Dr. Anderson, had recommended physical therapy as recently
as September 6, 2018.  Smith Decl. ¶ 24, Ex. L.

## II.   Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show
that there is "no genuine dispute as to any material fact and the movant is entitled to
judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court will grant summary judgment
"against a party who fails to make a showing sufficient to establish the existence of an
element essential to that party's case, and on which that party will bear the burden of proof
at trial . . . since a complete failure of proof concerning an essential element of the
nonmoving party's case necessarily renders all other facts immaterial."  *Celotex Corp. v.
Cattrett*, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of

the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted); Fed. R. Civ. P. 56(e). "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corporation Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252). "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W.*

9

United States District Court
Northern District of California

*Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id.; see, e.g., Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

## A.    <u>Deliberate Indifference</u>

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* The following are examples of indications that a prisoner has a "serious" need for medical treatment: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps

to abate it.  *See Farmer*, 511 U.S. at 837.  The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he must actually draw that inference.  *Id*.  If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.  *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

**B.**   **Analysis**

Plaintiff claims Defendant Fu "knowingly, unlawfully, and with specific intent violated [his] rights by: (1) levying reprisal against Plaintiff for… not waiving his Rights to Liability prior to receiving Medical treatment and (2) subjecting Plaintiff to cruel and unusual punishment by abruptly discontinuing previously prescribed medication of Methadone without prescribing any Low Level medication in order to avoid withdrawal symptoms."  Dkt. No. 1 at 8.

Plaintiff claims Defendant Votaw "knowingly, unlawfully, and with specific intent violated Plaintiff's rights by Deliberately ignoring plaintiff's submitted Emergency Appeal per Title 15 3084.9(a)(1), and screening such appeal as a regular Appeal thereby subjecting Plaintiff to significant injuries which could have been avoided by occurred as a direct result of Defendant M. Votaw's action."  Dkt. No. 1 at 9.

Plaintiff claims Defendant Posson "knowingly, unlawfully, and with specific intent violated Plaintiff's rights by Deliberately taking NO action on intervening to requested recommended Physical Therapy and NO intervention on Low Level medication in order to avoid withdrawal symptoms."  Dkt. No. 1 at 10 (original emphasis).

Defendants first assert that the undisputed facts show that Defendants Fu, Posson, and Votaw did not participate in any act that deprived Plaintiff of his federally protected rights by being deliberately indifferent to any of Plaintiff's serious medical needs.  Dkt. No. 29 at 13.  They assert that Plaintiff was provided with Methadone for his chronic pain on the condition that he refrain from using any non-prescribed mood-altering drug, such as marijuana.  *Id*.  Despite this agreement, Plaintiff used marijuana as shown by a routine

11

urine test on May 21, 2018.  *Id.*  Because he violated his pain contract and CDCR policy and because using marijuana and Methadone posed a health risk to him, Dr. Anderson decided to taper Plaintiff off the Methadone and try him on an alternative non-opioid medication, such as oxcarbazepine.[8]  *Id.*  Defendants assert that when Defendant Fu saw Plaintiff on July 29, 2018, for the purpose of tapering him off Methadone by bringing his 15 mg daily dose down to 10 mg for one week and then 5 mg for another week, his course of treatment was medically appropriate and consistent with CDCR policy.  *Id.* at 13-14. Defendants also assert that Defendant Posson's decision that no intervention on Plaintiff's 602 appeal was needed at the Institutional Level Review was proper because Plaintiff's Methadone was not abruptly stopped, as he claimed, and he continued to receive PCP follow-up appointments regarding his pain management after the tapering.  *Id.* at 14. Furthermore, Defendants assert that Defendant Votaw played no role in determining whether Plaintiff's 602 Appeal should be processed as an expedited or non-expedited appeal, and that Defendant Votaw did not provide Plaintiff with any medical care nor was she involved in making any medical decisions for him.  *Id.*  Based on these facts, Defendants assert that they did not cause Plaintiff to suffer any deprivation of his constitutional rights.

Defendants also assert that that there is no evidence that they acted with deliberate indifference towards Plaintiff.  Dkt. No. 29 at 16.  Defendants assert that Plaintiff was properly tapered off his Methadone when he violated his pain contract and CDCR policy by testing positive for marijuana use.  *Id.*  Defendants assert that the medical care he received was not medically unacceptable, and his difference of opinion in that regard is not sufficient to establish deliberate indifference.  *Id.*

In opposition, Plaintiff maintains that Defendant Fu deliberately and intentionally interfered with his previously prescribed Methadone treatment.  Dkt. No. 45 at 11.

---

[8] *See infra* at 4-5, fn. 7.

Plaintiff repeats his claim that Defendant Fu told him that he was discontinuing the Methadone because Plaintiff refused to sign Defendant Kowall's waiver of liability on July 25, 2018, but that he would document the reason as Plaintiff's positive urine sample test for cannabis. *Id.* Plaintiff asserts that Defendant Posson purposefully omitted his declaration contending that the urine test could have been a false positive from his decision, and that his failure to intervene was deliberate and intentional, causing Plaintiff further pain and suffering. *Id.* at 12. Plaintiff asserts that his documented medical records confirm that he had been taking Methadone since June 17, 2015, and that Defendants Fu and Posson were aware of his chronic pain which warranted the Methadone prescription for over three years. *Id.* Therefore, Plaintiff asserts the records raise an inference that Defendants Fu and Posson were aware of Plaintiff's need for chronic pain medication at the time Defendant Fu discontinued the Methadone. *Id.* Furthermore, Plaintiff asserts Defendant Fu was deliberately indifferent to his chronic pain in abruptly discontinuing his Methadone medication, failing to prescribe any low level medication in its place, and then attempting to prescribe the one medication to which Plaintiff was allergic. *Id.* at 13-14. Plaintiff asserts that he has also raised a triable issue that the Capsaicin Cream that was prescribed from August 12, 2018 to September 6, 2018, was an inappropriate substitute for methadone. *Id.* at 14. In support, Plaintiff requests judicial notice of several cases involving claims for insufficient pain management. *Id.* at 13-15. Plaintiff asserts, therefore, Defendants are not entitled to summary judgment because undisputed material facts show that Defendants were aware of Plaintiff's ongoing opioid withdrawal symptoms but disregarded those symptoms. *Id.* at 15.

In reply, Defendants assert that Plaintiff does not dispute that his May 21, 2018, urine sample tested positive for marijuana. Dkt. No. 47 at 1. Defendants also assert Plaintiff does not dispute that the use of marijuana constituted a violation of his pain treatment contract and CDCR policy, and that using marijuana while taking Methadone posed a health risk. *Id.* at 1-2. For these reasons, Defendants assert, it was appropriate for

Dr. Anderson to decide to take Plaintiff off of Methadone, and for Defendant Fu to evaluate Plaintiff for the purpose of tapering him off Methadone on July 29, 2018.[9]  *Id.* at 2.  Furthermore, Defendants assert Plaintiff does not dispute that Defendant Fu tapered him off of Methadone rather than stop it "cold turkey"; in his grievance, Plaintiff complained that "there should have been a longer period of tapering."  *Id.* at 2; Posson Decl., Ex. A at CDCR-00680.  Defendants point out that Plaintiff complains for the first time in opposition that Defendant Fu should have referred him to the prison's Pain Management Committee or the Clinical Opiate Withdrawal Scale ("COWS"), *id.*, citing Smith Decl. ¶¶ 17-18.  Defendants assert, however, that the tapering of Plaintiff's Methadone was medically appropriate, and that Plaintiff presents no evidence to the contrary.  *Id.* at 2.  With respect to Defendant Posson, Defendants assert Plaintiff does not dispute the medical records reviewed by Defendant Posson in conducting the Institutional Level Review of Plaintiff's health care grievance, which showed that (1) Plaintiff violated his pain care contract by testing positive for marijuana; (2) Defendant Fu tapered Plaintiff off of Methadone because he violated his pain care contract; and (3) Plaintiff had received, and was continuing to receive, physician evaluations for his pain management plan of care.  *Id.*  For these reasons, Defendants assert, Defendant Posson appropriately determined that no additional intervention was needed at that time.  *Id.*  With respect to physical therapy, Defendants assert that Plaintiff did not raise that issue in his health care grievance, and therefore there was no reason for Defendant Posson to specifically address that issue.  *Id.*  Lastly, Defendants assert Plaintiff presents no opposition or discussion addressing Defendant Votaw's motion for summary judgment.  *Id.*  Defendants assert that Defendant Votaw only administratively processed Plaintiff's heath care grievance by forwarding it to medical staff for review, and she played no role in determining whether the grievance should be processed as expedited or non-expedited nor was she involved in Plaintiff's

---

[9] But as discussed above, the medical records do not clearly indicate the Dr. Anderson was the one who made this decision.  *See supra* at 4-5, fn. 7.

medical care.  *Id.* at 2-3.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds there exist no genuine dispute as to any material fact relating to Plaintiff's claim of deliberate indifference against Defendants.  First with respect to Defendant Votaw, Defendants submit evidence showing that Nurse Chua, not a party to this action, was the medical staff who decided that Plaintiff's health care grievance was not to be expedited.  *See supra* at 6. In response, Plaintiff fails to submit evidence showing that Defendant Votaw did anything else but forward Plaintiff's health care grievance to the proper medical staff after Nurse Chua's designation.  Plaintiff presents no evidence that Defendant Votaw's role was anything more than that or that she had authority to override Nurse Chua's determination. Accordingly, summary judgment should be granted with respect to the Eighth Amendment claim against Defendant Votaw because there is simply no evidence that she acted with deliberate indifference with respect to Plaintiff's serious medical needs.  *See Celotex Corp.*, 477 U.S. at 323.

With regards to Defendant Fu, there are several factual disputes, but none are material.  Even if the Court assumes Defendant Fu was the one who ordered the taper as Plaintiff asserts, the undisputed evidence shows that Plaintiff tested positive for marijuana from a urine sample that was taken on May 21, 2018.  *See supra* at 3-4.  There is no dispute that using marijuana violated the terms of Plaintiff's pain treatment contract.  *Id.* at 4.  Although Plaintiff asserts that the result *could* have been a false positive, the fact remains that Defendant Fu had a reasonable basis to discontinue the Methadone treatment based on his belief that Plaintiff had violated the pain care contract as indicated by the positive urine test.  Furthermore, the evidence shows that Defendant Fu did not "abruptly" discontinue the Methadone as Plaintiff claims, but that Defendant Fu ordered it be tapered over a two-week period.  *Id.* at 4.  When Plaintiff declined the offer of Tylenol with codeine as an alternative pain medication, Defendant Fu noted that Plaintiff would follow up with his PCP "for alternate treatment of his shoulder and evaluations of pain."  *Id.*; Fu

Decl., Ex. A at CDCR-000157.  There is no dispute that Plaintiff had a follow-up appointment just a week later, on August 6, 2018.  *Id.* at 5.  In opposition, Plaintiff asserts that Defendant Fu was designated as his "PCP" on July 29, 2018, attempting to assert thereby that Defendant Fu was responsible for his care thereafter.  Dkt. No. 45 at 3. However, there is no evidence to support this assertion, and Defendant Fu's declaration states that he was merely covering an extra work shift at CTF at that time.  *See supra* at 4. Furthermore, the Court notes that Plaintiff alleged in his health care grievance that Defendant Fu "was NOT and has NEVER BEEN [Plaintiff's] PCP on 07/29/18."  Fu Decl., Ex. B at CDCR-00678 (original emphasis).  Contrary to this earlier allegation, Plaintiff now claims that Defendant Fu *was* his PCP.  But this fact is ultimately immaterial because there is no evidence that Defendant Fu knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk when he decided to taper Plaintiff's Methadone medication.  *See Farmer*, 511 U.S. at 837.  Plaintiff asserts in opposition that the information in his medical records was sufficient to raise an inference that Defendant Fu was aware of his need for chronic pain medication at the time he discontinued the Methadone.  *See supra* at 13.  However, Defendant Fu must both know of facts from which the inference could be drawn, and he must actually draw that inference.  Plaintiff provides no evidence that Defendant Fu actually drew that inference.  If Defendant Fu should have been aware of risk but was not, and here there is no evidence that he was, then Defendant Fu has not violated the Eighth Amendment, no matter how severe the risk.  *See Gibson*, 290 F.3d at 1188.  At most, Defendant Fu was negligent for failing to be aware of the risk, but negligence is not sufficient to make out a violation of the Eighth Amendment. *See Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

Lastly, with respect to Plaintiff's claim that Defendant Fu was "levying reprisal" against him for not waiving his rights and liability when he saw Defendant Kowall for an orthopedic referral on July 25, 2018, this allegation is conclusory without any evidentiary support.  The progress notes from the July 29, 2018 appointment with Defendant Fu shows

16

1   that Plaintiff was seen for his positive urine test for cannabis and refusal for right shoulder

2   procedure.  Fu Decl., Ex. B at CDCR-000156.  Plaintiff explained that he refused the

3   procedure because he did not want to sign a waiver for risks of surgery.  *Id.*  There is no

4   evidence that Defendant Fu was aware of Plaintiff's refusal to sign a waiver before

5   Plaintiff described the incident to him during this appointment.  Rather, the evidence

6   shows that Defendant Fu knew Plaintiff tested positive for cannabis prior to seeing

7   Plaintiff, and that Defendant Fu intended to begin tapering Plaintiff off of Methadone at

8   this appointment because Plaintiff violated the pain contract.  *Id.*; Fu Decl. ¶ 10.

9   Furthermore, Plaintiff offers no explanation as to what stake Defendant Fu had in the

10  waiver of liability from Defendant Kowall such that Defendant Fu had a reason to retaliate

11  against Plaintiff for his failure to sign.  Rather, the undisputed facts are that Plaintiff tested

12  positive for marijuana during a random urine test on May 21, 2018, and that it violated

13  Plaintiff's pain contract.  It is also undisputed that Defendant Fu ordered a gradual

14  Methadone taper over a two week period, and that Plaintiff received the full benefit of that

15  taper.  To the extent that Plaintiff disagrees with the length and manner of tapering, it is

16  merely a difference of opinion between a prisoner-patient and prison medical authorities

17  regarding treatment which does not give rise to a § 1983 claim.  *See Franklin v. Oregon*,

18  662 F.2d 1337, 1344 (9th Cir. 1981).  There is also no evidence that Defendant Fu

19  intentionally did not refer Plaintiff to the Pain Management Committee or to COWS,

20  despite knowing that doing so would abate a substantial risk of serious harm to Plaintiff.

21  Rather, Defendant Fu saw Plaintiff for the first time and for the limited purpose of tapering

22  his Methadone on July 29, 2018.  Defendant Fu knew that Plaintiff was to have follow-up

23  care with his PCP for alternate treatment of his shoulder and evaluations of pain, and that

24  Plaintiff could submit health care requests for any medical problems that arose.  Plaintiff

25  provides no evidence in opposition showing that Defendant Fu was otherwise aware of an

26  excessive risk of harm to Plaintiff and chose to disregard it.  Lastly, there is no evidence

27  that Defendant Fu had any further involvement in Plaintiff's medical treatment thereafter.

28

Rather, Plaintiff had several follow-up appointments with other physicians. Accordingly, it cannot be said that the evidence regarding Defendant Fu's actions during the single appointment he had with Plaintiff on July 29, 2018, is such that a reasonable jury could return a verdict in favor of Plaintiff. *See Liberty Lobby, Inc.*, 477 U.S. at 248.

With respect to Defendant Posson, there is no genuine dispute of material fact that he acted with deliberate indifference in deciding no intervention was necessary at the Institutional Level Review of Plaintiff's health care grievance. Plaintiff claims that Defendant Posson wrongfully took no action with respect to his request for physical therapy. *See supra* at 11. However, as Defendants point out in reply, Plaintiff's health care grievance makes no mention of a request for physical therapy; accordingly, Defendant Posson could not have been deliberately indifferent for failing to address it. *See supra* at 14; Posson Decl., Ex. B at CDCR-00678-00680. Rather, Plaintiff's primary concern in the health care grievance was with regards to his Methadone taper and the lack of alternative pain medication. *Id.* Defendant Posson's decision was based on information in Plaintiff's health record, which indicated that Plaintiff tested positive for cannabis, which is undisputed. Plaintiff's use of cannabis violated his pain contract, which is also undisputed. Accordingly, it appeared to Defendant Posson that the taper of Methadone ordered by Defendant Fu on July 29, 2018, was appropriate. The plan thereafter was for Plaintiff to have a follow-up with his PCP to discuss alternative pain management therapies, which is also undisputed. Plaintiff thereafter had three follow-up appointments to discuss his pain management, and at each visit the physician prescribed a trial of alternative pain treatment. *See supra* at 5-6. Because this information indicated that Plaintiff's taper was appropriate and that his need for alternative pain management therapies was being addressed, it cannot be said that Defendant Posson knew of a substantial risk of serious harm to Plaintiff and ignored it. As with Defendant Fu, Plaintiff asserts that information in his medical records was sufficient to raise an inference that Defendant Posson was aware of Plaintiff's need for chronic pain medication. *Id.* at 13. However, Defendant Posson must both know of facts

United States District Court
Northern District of California

from which the inference could be drawn, and he must actually draw that inference. Plaintiff provides no evidence that Defendant Posson drew such an inference.  If Defendant Posson should have been aware of risk but was not, that is mere negligence on his part, and is not sufficient to make out a violation of the Eighth Amendment.  *See Toguchi*, 391 F.3d at 1060.  Absent evidence that he actually drew the inference, Defendant Posson has not violated the Eighth Amendment, no matter how severe the risk. *See Gibson*, 290 F.3d at 1188.

Plaintiff cites to several cases which he asserts supports denying Defendants' summary judgment motion.  Dkt. No. 45 at 13-15.  However, these cases are mostly distinguishable from Plaintiff's case and therefore inapplicable and the last case provides support for granting summary judgment in favor of Defendants.  The first case, *Anderson v. Kimura-Yip, et al.,* Case No. 2:12-cv-00261-MCE-KJN (2017), involved a case where opioid based therapy was stopped "cold turkey."  Dkt. No. 45 at 13.  That case is distinguishable from Plaintiff's case because as discussed above, his Methadone was not stopped "cold turkey" but tapered over a two-week period.  The second case, *Donges v. Durett, et al.*, Case No. CIV S-09-0360-DAD (2011), involved a pretrial detainee who claimed inadequate medical and mental health care under the Fourteenth Amendment, and is therefore inapplicable to Plaintiff's Eighth Amendment claim.  Dkt. No. 45 at 14.  The third case, *Strain v. Sandham, et al.*, Case No. CIV S-05-0474-GEH-GGH (2009), also involved a case where methadone was stopped "cold turkey" upon an inmate's transfer to the prison, which is inapplicable to the facts of this case.  Dkt. No. 45 at 14.  The fourth case, *Owens v. Clark, et al.*, Case No. 2:15-CV-0982-TLN-KFN (2018), involved a morphine taper.  Dkt. No. 45 at 14-15.  However, the inmate in *Owens* claimed that he was denied any alternative pain management until the morphine was completely "washed out" of his system.  Here, the undisputed evidence shows that Plaintiff was provided with alternative pain management therapies even before he was completely tapered off of Methadone.  Lastly, *Hudson v. Nangalama, et al.*, Case No. CIV S-09-2328-CKD (2012),

involved the issue of whether defendant provided medication to alleviate symptoms of withdrawal for Percocet. *Id.* Although the magistrate judge recommended that defendants' summary judgment should be denied on that claim, the district court did not adopt that recommendation and instead granted summary judgment, finding there was evidence that defendant prescribed alternative medication at the same time he took inmate off of Percocet. The Ninth Circuit affirmed the district court's grant of summary judgment on appeal. *Hudson v. Nangalama, et al.*, 505 Fed.Appx. 644, 2013 WL 2277001 (9th Cir. 2013). The facts of *Hudson* are similar to the case at bar, and therefore supports a grant of summary judgment in favor of Defendants rather than Plaintiff.

Based on the undisputed facts, Defendants have shown there is an absence of a genuine dispute of material fact with respect to the Eighth Amendment claims against them. *See Celotex Corp.*, 477 U.S. at 323. Plaintiff has failed to meet his burden of identifying with reasonable particularity the evidence that precludes summary judgment, *see Keenan*, 91 F.3d at 1279, or submit evidence from which a jury could reasonably render a verdict in his favor, *In re Oracle Corporation Securities Litigation*, 627 F.3d at 387. Accordingly, Defendants Fu, Posson, and Votaw are entitled to summary judgment on all the claims against them. *See Celotex Corp.*, 477 U.S. at 323.

## CONCLUSION

For the reasons stated above, Defendants Dr. Law Fu, M. Votaw, and S. Posson's motion for summary judgment is **GRANTED**. Dkt. No. 29. The Eighth Amendment deliberate indifference claims against them are **DISMISSED** with prejudice.

The Clerk shall terminate these Defendants from this action.

This order terminates Docket No. 29.

**IT IS SO ORDERED.**

Dated: ___September 1, 2020_____

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

Order Granting MSJ
PRO-SE\BLF\CR.19\02119Smith_grant-msj.Defs

United States District Court
Northern District of California